[Civ. No. 48034. First Dist., Div. One. Feb. 27, 1981.]

DAVID STUART VUKMAN, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard L. Patsey and Leonard & Patsey for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Herbert F. Wilkinson, Deputy Attorney General, for Real Party in Interest.

**OPINION**

GRODIN, J.—On July 30, 1977, Leslie Edward King was working as a bartender at Woodham's Bar. At 2 a.m. he heard a noise like a firecracker, turned around, and saw a man pointing a gun at him. The man threw a sack at the victim and said, "Give me the money." King complied, and the man left.

Over two years later, on August 10, 1979, petitioner was held to answer for this crime[1] on the basis of evidence introduced at a preliminary hearing on that date. Petitioner moved in the court below to dismiss the charges on the basis of insufficiency of the evidence (Pen. Code, § 995) and denial of his statutory (Pen. Code, § 1381) and constitutional rights to a speedy trial. Both motions were denied, and petitioner in timely fashion sought relief in this court through petition for mandate and/or prohibition. This court issued a stay pending opposition, and subsequently an alternative writ.

---

[1]Petitioner was charged with robbery with a use clause (Pen. Code, §§ 211, 12022.5) and possession of a firearm by a felon or addict (Pen. Code, § 12021), and with several prior felony convictions.

*Sufficiency of the Evidence*

The evidence adduced at the preliminary hearing, insofar as it purported to link petitioner with the 1977 robbery, can be summarized as follows. Within a few days King was contacted by the Santa Clara County Police Department who showed him a photographic lineup "something like" an exhibit shown him at the hearing. On direct examination the district attorney asked: "Do you recall . . . having been asked to look at this photographic . . . lineup to see if you could select a person that was the person *or most closely fit* the person that robbed you?" (Italics added.) King stated yes, and that he made a selection, and that the police did not tell him which photo to select.

Cross-examination revealed that the victim was not sure of the day of the week, the date, or even the year of the robbery. He could not describe the gun. The robber was about four or five feet from him on two occasions for about five to ten seconds each (once when King went to get the paper bag, and once when he delivered it back to the robber).

King described the perpetrator as about five feet eight inches or five feet nine inches tall and of average weight. He could not describe his clothing in any way; he could not, for example, remember whether he was wearing a hat.

King was unable to identify petitioner based upon the observations during the crime; neither could he identify petitioner at an earlier preliminary hearing.

Regarding the photo lineup procedure, the testimony was as follows: "[King:] They said there are some photographs, *which one looks like the person* that held you up and I picked out a picture. Q. All right. And you picked out the photograph that *most looked like* the person who held you up? A. Yes, I did. Q. When you picked out that photograph, of course, you weren't sure. That is, *you are not sure* today who actually held you up? A. *On a scale of one to ten I would say eight.* Q. In other words, number three on this exhibit, the one I guess you picked out, *looked more like the person* who committed the robbery *than the other five* does [*sic*], I understand. A. That's true. Q. And *that's why you picked him out*? A. That's true." (Italics added.)

Sergeant Wayne Britt investigated the robbery and testified that the photo King selected was of petitioner. He stated that King read and signed a witness card during the procedure.

"It has long been the rule in this state that 'An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime.' (*People v. Gould* (1960) 54 Cal.2d 621, 631...; see also *People v. Belton* (1979) 23 Cal.3d 516, 535-537...[conc. opn. by Jefferson, J.]; *In re Eugene M.* (1976) 55 Cal.App.3d 650...; Jefferson, Cal. Evidence Benchbook (June 1978 supp.) § 10.1, pp. 131-134.)" (*In re Johnny G.* (1979) 25 Cal.3d 543, 547 [159 Cal.Rptr. 180].)

The test of whether evidence adduced at a preliminary hearing is sufficient to support a holding order is whether it is enough to induce a strong suspicion in the mind of a man of ordinary caution and prudence that a crime has been committed and that the defendant was the guilty party. ■ In testing the evidence offered to support the prosecution, every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*People v. Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d 344]; *People v. Dickinson* (1976) 59 Cal. App.3d 314, 320 [130 Cal.Rptr. 561].) The evidence need not be sufficient to sustain a conviction. (*Lorenson v. Superior Court* (1950) 35 Cal.2d 49, 56 [216 P.2d 859].) If there is some evidence to support the information, a reviewing court may not weigh its sufficiency. (*Ibid.*; *People v. Velasquez* (1975) 53 Cal.App.3d 547, 553 [126 Cal.Rptr. 11].)

■ Here, the victim was asked (to use the district attorney's words) "to see if [he] could select a person that was the person or most clearly fit the person that robbed [him]"; or (in the victim's words), he was asked "which one looks like the person." He was not asked if he believed the photograph was *of* the robber, but if it resembled him.

We conclude that the evidence was insufficient to support a holding order.

*Speedy Trial*

■ We proceed now to consider petitioner's additional contention based upon Penal Code section 1381, which provides in effect that

whenever a defendant has been convicted and committed to jail or the California Rehabilitation Center (CRC), if at the time of commitment there is pending within the state another criminal action the district attorney must bring defendant to trial on the pending charge within 90 days after defendant delivers to the district attorney written notice of his commitment and his desire to be brought to trial. If defendant is not brought to trial within 90 days, the court must dismiss the action. Absent a showing of substantial new evidence and due diligence by the prosecution, a second dismissal bars prosecution for the same offense. (Pen. Code, § 1387, as amended in 1975; see *Crockett v. Superior Court* (1975) 14 Cal.3d 433 [121 Cal.Rptr. 457, 535 P.2d 321] [pre-1975 amendment].)

Following is a chronology of the pertinent procedural events:

On August 4, 1977, a complaint was filed in the Santa Clara County Municipal Court charging petitioner with armed robbery (Pen Code, §§ 211, 12022.5) and possession of a firearm by a felon (Pen. Code, § 12021).

On January 20, 1978, following his conviction on other, unrelated charges petitioner was transferred by the Alameda County Superior Court to the CRC. A "hold" which had been filed on the armed robbery charges by the Santa Clara County Police Department was forwarded from Santa Rita to CRC on January 27, 1978.

On October 27, 1978, petitioner, through his attorney, sent to the Santa Clara County District Attorney a "Commitment Notice and Demand for Trial" form.

On January 30, 1979, following arraignment and a preliminary hearing, the Santa Clara County District Attorney filed an information charging petitioner with robbery with use of a firearm and with a prior felony conviction.

On February 28, 1979, the Santa Clara County Superior Court granted petitioner's motion to dismiss the information pursuant to Penal Code section 1381.

On March 2, 1979, a complaint containing the same charges against petitioner was refiled in the Santa Clara County Municipal Court.

On March 28, 1979, petitioner, apparently on parole, was arrested on the refiled charges pursuant to warrant.

On April 11, 1979, petitioner moved to dismiss the refiled complaint pursuant to Penal Code sections 1381 and 1387.

On April 17, 1979, the Santa Clara County Municipal Court granted petitioner's motion to dismiss.

On June 25, 1979, the Santa Clara County Superior Court granted a peremptory writ of mandate directing the municipal court to vacate its order of dismissal and to hold a preliminary hearing.

The matter, initially set for July 5, 1979, was continued three times: from July 5 to July 12; from July 12 to July 26; and from July 26 to July 27. The reporter's transcript reflects that the first two delays were attributable to the prosecution's failure to produce petitioner in court, and that the third delay was at the request of the prosecution.

On July 27, 1979, petitioner appeared and entered a plea of not guilty, and bail was set.

On August 10, 1979, a preliminary hearing was held on the refiled complaint, and petitioner was held to answer.

On August 21, 1979, an information was filed charging petitioner with the crimes alleged in the refiled complaint. On that date, petitioner entered a plea of not guilty and denied the armed allegation and prior convictions. The court set the matter for trial on October 10, 1979. The record does not reflect any objection by petitioner to that trial date, or any reference to the petitioner's speedy trial rights.

On September 12, 1979, petitioner moved to dismiss the charges on the basis, among others, of his speedy trial rights. The motion was denied, and further proceedings were stayed by order of this court.

The People concede that the Penal Code section 1381 clock began to run on the refiled charges the day they were filed, on the theory that the filing of the second complaint constituted a response to petitioner's original demand for a speedy trial, and no new demand was required. (Cf. *People v. Rowden* (1969) 268 Cal.App.2d 868, 871 [74 Cal.Rptr.

448]; *People* v. *Hughes* (1974) 38 Cal.App.3d 670, 675 [113 Cal.Rptr. 508].)

The People also concede, at least arguendo, that the clock was running from June 25, 1979 (the date the superior court granted a peremptory writ of mandate reversing the municipal court's order of dismissal), to August *21*, 1979 (the date the matter was set for trial).

The parties are in dispute, however, with respect to the period from April 11 (when petitioner filed his second motion to dismiss with the municipal court) to April 17 (when the muncipal court granted his motion); the period from April 17 to June 25 (when the superior court reversed the order of dismissal); and the period from August 21 to the date of trial.

The People focus their analysis exclusively upon the latter period, on the theory that petitioner, by failing to object to the October 10 trial date, necessarily waived any speedy trial objection he might have had, even if the 90-day period had already expired. And they rely, in support of that theory, upon *People* v. *Lenschmidt* (1980) 103 Cal.App.3d 393 [163 Cal.Rptr. 68], in which Division Four of this district held that an incarcerated defendant who failed *within* the section 1381 period to object to a trial setting *after* the section 1381 period would be deemed to have waived by consent.

Assuming that *Lenschmidt* correctly states the law with respect to the circumstances present in that case,[2] the rationale of that opinion —that a defendant should be required to warn the court so that it will have an opportunity to advance the case for timely trial—has no application where, at the time of trial setting, the section 1381 period has already expired. As the opinion stated: "Our laws with respect to securing the accused a speedy public trial require some activity by the accused: 'The *only* duty placed upon an accused in protecting his right to a speedy trial is to object when his trial is set for a date beyond the statutory period and then move to dismiss once that period expires, or merely move to dismiss if the statutory period expires without a trial date being set.' [Citations.]" (*Id.*, at p. 396, italics in original.)

---

[2]We note that *People* v. *Lenschmidt, supra*, 103 Cal.App.3d 393, is based primarily upon cases decided under section 1382. (*Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 88-89 [106 Cal.Rptr. 786, 507 P.2d 90]; *People* v. *Wilson* (1963) 60 Cal.2d 139, 146-148 [32 Cal.Rptr. 44, 383 P.2d 452].) An exception is *People* v. *Robinson* (1968) 266 Cal.App.2d 261, 264 [72 Cal.Rptr. 33], but that case, in turn, relies upon cases

Here, on the basis of the People's concessions, the section 1381 period had expired by August 21 whether or not the period was extended by the time consumed in litigation of petitioner's motion to dismiss. Without extension, the period expired on May 31. If the period was tolled from April 11 to June 25 (as the People contend), then it expired by August 14. Under these circumstances, petitioner's "only duty" was to move for dismissal, which he did. A finding of waiver by silence under such circumstances would not be in accord with the policy of the statute.

Having determined that petitioner's section 1381 rights were denied him, it is unnecessary to consider his alternative contention based upon constitutional rights to a speedy trial.

A writ of prohibition will issue restraining respondent court from taking any action against petitioner other than dismissing the charges against him.

Elkington, Acting P. J., and Newsom, J., concurred.

---

decided under section 1382. Section 1382 provides for waiver by the defendant's "consent, express or implied." Section 1381, by contrast, provides that trial must be had, on pain of dismissal, within 90 days after demand "unless a continuance is requested or consented to by [the incarcerated defendant], in open court, and such request or consent entered upon the minutes of the court . . . ." Arguably the differences in language and policy underlying the two statutes call for different results on the issue of waiver by silence. We need not, however, reach that issue here.