[Crim. No. 22605. Aug. 16, 1982.]

In re MIGUEL L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL L., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Supreme Court, J. Courtney Shevelson, Carole S. Morita and Monica Knox, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BIRD, C. J.**—May a minor be adjudicated a ward of the juvenile court when the only evidence connecting him to the charged offense consists of the repudiated extrajudicial statements of a self-declared accomplice?

I.

Miguel L., a minor, was adjudged a ward of the juvenile court (Welf. & Inst. Code, § 602) upon a finding that he had committed a burglary (Pen. Code, § 459). The prosecution's case against appellant was based solely on the repudiated extrajudicial accusations made by a self-declared accomplice, Arnaldo G.

On January 18, 1980, at 10:30 p.m., police officers arrested Arnaldo for possessing a weapon and placed him in custody.[1] The next evening, Arnaldo was interviewed at juvenile hall by Sergeant Anaya of the Los Angeles County Sheriff's Department. In addition to questioning Arnaldo about the weapon, Anaya told the minor that he had information implicating him in several burglaries. Arnaldo was informed by Anaya of his *Miranda* rights and agreed to talk.

The minor admitted his involvement in a number of burglaries, including one at the Ross home on December 17, 1979. Arnaldo identified appellant and a third person as his accomplices in the Ross burglary, indicating that the three of them had stolen guns from the house.

---

[1] The record does not indicate the particular Penal Code section which was allegedly violated by Arnaldo.

Following the conclusion of the interview, Arnaldo agreed to accompany Sergeant Anaya to the scenes of the various burglaries. The minor directed Anaya to one location where a .16 gauge Browning shotgun, which had been taken from the Ross home, was recovered.

On February 8, 1980, Sergeant Anaya and Deputy Overton conducted a second interview with Arnaldo, who was still in custody. This interview was tape-recorded and conducted in the presence of Arnaldo's attorney. After waiving his *Miranda* rights, Arnaldo stated that on December 17, 1979, he and appellant were walking by the Ross home when appellant suggested burglarizing it. According to Arnaldo, appellant climbed into the house through an unlocked window and opened the side door for Arnaldo to enter. Arnaldo said he did not steal any items from the house, but observed appellant take a number of guns and hide them behind a nearby church. Arnaldo claimed appellant sold most of the guns and kept the proceeds for himself.

The interview with the officers was concluded when Arnaldo identified other individuals who he claimed participated in several other burglaries. He then asked whether the police would allow him "to go home on . . . supervision." In exchange for his cooperation with the police and his expected testimony in court, Arnaldo was granted immunity from prosecution for the Ross burglary and three other burglaries to which he had confessed.

At appellant's jurisdictional hearing, Irene Ross testified that on the evening of December 17, 1979, she returned home to find the kitchen window open and five to seven rifles missing from the bedroom closet. When Arnaldo was called by the prosecution to the stand, he testified as follows.

"Q. [Counsel for the People] Did you and [appellant] go into anyone else's house that day? [¶] A. I just want to say this, I don't want nothing to happen to the guy, you know. [¶] [Counsel for Defendant] Objection. [¶] THE COURT: Overruled. [¶] THE WITNESS: I don't want him to get sent to camp because, you know, they sent me to camp and I am doing the time, you know, so why, you know, go put the rap on somebody else, you know. [¶] Q. [By counsel for the People] Arnaldo, try to listen to the question and answer what I ask you. Did you and [appellant] go into anyone else's house that day? [¶] A. I don't want to say. Do I have to say? [¶] THE COURT: It is not a question of rapping on somebody. You don't have [the] right not to testify. Your obligation

is to just tell the truth. [¶] THE WITNESS: That is what I want to say. I don't want to testify. [¶] THE COURT: I understand, but you don't have that right not to testify. You have to answer the questions truthfully. [¶] THE WITNESS: No. [¶] THE COURT: Go ahead."[2]

Arnaldo thereafter denied the veracity of the statements he had made during the police investigation. He also specifically denied that appellant participated in the burglary of the Ross home.

The prosecution introduced into evidence the tape recording of the February 8th interview. Sergeant Anaya testified about his investigation of the crime and described the recovery of the stolen Browning shotgun. Anaya stated that he had known Arnaldo for several years and had arrested him for several other burglaries. In the officer's opinion, Arnaldo had a "fairly good" reputation for honesty in the community. The officer also stated that Arnaldo and appellant sometimes had a friendly relationship, but at other times they fought with each other.[3]

The juvenile court sustained the petition against appellant and held that "the statements made by Arnaldo which incriminate the minor are detailed and specific and while they are inconsistent in some aspects, they do provide an overall convincing force which convinced me to a moral certainty of the truth of the matter. [¶] . . . [Arnaldo] just denied having made the statements because he didn't want to be a snitch or an informer at this point in the process, so I find the evidence is sufficient beyond a reasonable doubt to sustain the petition."

Appellant brings this appeal from his adjudication as a ward of the juvenile court.

## II.

■ The principal issue raised before the court is whether sufficient evidence exists to support a finding that appellant participated in the Ross burglary. Appellant contends that the juvenile court should not

---

[2]Apparently, at the time of the jurisdictional hearing, Arnaldo was in custody for an offense unrelated to those for which he was granted immunity from prosecution.

[3]The prosecution presented only one other witness at the jurisdictional hearing. Sergeant Rynan testified that he returned the Browning shotgun to Mr. Ross.

The only witness called to testify for the defense was Marina T., appellant's girlfriend and mother of his child. She testified that Sergeant Anaya had told her prior to the jurisdictional hearing that he had "a number on Miguel and [was] going to do a number on Miguel and [was] going to do everything and anything to put him away no matter how long it t[ook]." Anaya denied making this statement.

have sustained the petition since the only inculpatory evidence introduced by the prosecution consisted of Arnaldo's extrajudicial statements.

The Fourteenth Amendment of the United States Constitution guarantees due process of law and mandates that "no person shall . . . suffer the onus of a criminal conviction except upon sufficient proof . . . to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 316 [61 L.Ed.2d 560, 571, 99 S.Ct. 2781].)

The basic rule with respect to the sufficiency of extrajudicial statements to support a conviction was set forth by Justice Traynor for a unanimous court in *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865]. ■ "An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime." (*Id.*, at p. 631.)

In *Gould*, two defendants were convicted of burglarizing an apartment. The only evidence linking defendant Marudas to the crime was the victim's photographic identification of him as one of the perpetrators. At trial, the victim could not confirm her prior out-of-court identification.

This court reversed the judgment against Marudas, holding that the victim's pretrial identification, standing by itself, was insufficient as a matter of law to support the burglary conviction. (*Ibid.*) In addition, the *Gould* court found that the photographic identification was particularly unreliable because the police had presented the victim with only a small number of still photographs from which to select the burglary suspect. (*Ibid.*)

The principles enunciated in *Gould* have been reaffirmed in several recent decisions. (See, e.g., *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196]; *People* v. *Belton* (1979) 23 Cal.3d 516, 535-537 [153 Cal.Rptr. 195, 591 P.2d 485] (conc. opn. of Jefferson, J.); *Vukman* v. *Superior Court* (1981) 116 Cal.App.3d 341, 345 [172 Cal.Rptr. 44]; *In re Eugene M.* (1976) 55 Cal.App.3d 650 [127 Cal.Rptr. 851]; see also 1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 10.1, pp. 337-339.)

In *Johnny G., supra*, the juvenile court sustained a petition charging a juvenile with committing an assault with a deadly weapon. At the jurisdictional hearing, the arresting officer testified that he found the victim lying in the street with his face covered with blood. According to the officer, the dazed victim pointed out the minor as one of his assailants from a group of people standing nearby. However, when called to testify, the victim denied making such an identification to the officer and claimed that he did not regain consciousness from the assault until he arrived at the hospital. Relying on *Gould*, this court reversed the finding of the juvenile court since the only evidence linking the minor to the assault consisted of the repudiated extrajudicial identification which was rendered additionally suspect by the victim's dazed condition when questioned by the police. (*In re Johnny G., supra*, 25 Cal.3d at pp. 547-548.)

This court has recognized one exception to the *Gould* rule which requires the reversal of a conviction when it is based solely on an extrajudicial statement not confirmed by the witness at trial. The conviction may stand if the extrajudicial statement was reiterated by the witness under oath at a preliminary examination or other judicial proceeding, and there was evidence from which the factfinder could credit the witness' prior testimony over his or her failure to confirm the extrajudicial statements at trial. (*People v. Ford* (1981) 30 Cal.3d 209, 214-215 [178 Cal.Rptr. 196, 635 P.2d 1176]; *People v. Chavez* (1980) 26 Cal.3d 334, 364 [161 Cal.Rptr. 762, 605 P.2d 401].)

In *Chavez*, the jury found that the defendant had personally shot a rifle from a moving automobile at a group of youths congregated in a housing project parking lot. A number of witnesses told the police that the defendant was one of the persons in the car. However, only one witness identified the defendant as the person who fired the rifle. That witness positively confirmed the identification under oath at the preliminary examination. At trial, however, the witness refused to testify against the defendant "because he felt that the whole matter 'should be settled in the streets' rather than in court." (*Ibid.*)

This court initially noted that, under *Gould*, the witness' "identification of defendant ... during the investigation of the crime ... would not in itself be sufficient to support the firearm use findings ...." (*Ibid.*) However, the *Chavez* jury "had before it a transcription of [the witness'] positive identification ... under oath at defendant's preliminary examination.... This sworn testimony at a formal, judicially

conducted preliminary examination clearly provide[d] a more substantial basis for the firearm use finding than the extrajudicial identifications in *Gould, Johnny G.*, or *Eugene M.*" (*Ibid.*)

Moreover, in light of the witness' desire to settle the matter in the streets, the jury had a sound basis upon which to discount the witness' failure to make an identification at trial and thus to give "credence to his prior testimony against defendant." (*Ibid.*) Under these circumstances, this court upheld the jury's determination that the defendant had personally used the firearm during the shooting.

The facts of *Ford* are substantially similar to those of *Chavez.* The sole witness to a robbery identified the defendant from a photographic lineup and confirmed the identification at the preliminary examination. At trial, however, the witness testified that he could not identify the defendant as the man who had committed the crime. Nevertheless, the jury convicted the defendant.

On appeal, this court found the evidence sufficient to warrant affirming the judgment, distinguishing *Gould* and its progeny on the same two grounds as in *Chavez.* (*People* v. *Ford, supra*, 30 Cal.3d at pp. 213-216.) First, the witness' "positive identification of defendant was made in a formal judicial proceeding, under oath and subject to cross-examination. These are traditional indicia of reliability, and satisfy the concerns underlying the *Gould* rule." (*Id.*, at p. 215.) Secondly, as in *Chavez*, the circumstances of *Ford* "provided the jury with a basis on which it could have discredited [the witness'] trial testimony in favor of his preliminary hearing testimony." (*Id.*, at p. 214.)

The present case does not fall within the *Chavez-Ford* exception to the *Gould* rule. No evidence other than Arnaldo's prior unsworn statements, which were repudiated at trial, tends to connect appellant to the Ross burglary. These statements do not satisfy the requirements of the *Gould* rule since they lack the traditional indicia of reliability possessed by sworn testimony which has been subjected to cross-examination in a formal judicial proceeding. Such formal procedures are necessary in order to test the veracity, recollection, and possible bias of the witness, as well as the effect of official conduct toward the witness.

As Wigmore notes, cross-examination is "the greatest legal engine ever invented for the discovery of truth." (5 Wigmore, Evidence (Chad-

bourn rev. ed. 1974) § 1367, p. 32.) "Striking illustrations of its power to expose inaccuracies and falsehoods are plentiful in our records . . . ." (*Id.*, at p. 33.) In addition, the oath that a witness takes in a judicial proceeding "impress[es the witness] with the seriousness of the matter and guard[s] against the lie by the possibility of a penalty for perjury . . . ." (*California* v. *Green* (1970) 399 U.S. 149, 158 [26 L.Ed.2d 489, 497, 90 S.Ct. 1930].) In this case, unlike *Chavez* and *Ford*, the identification relied upon by the factfinder was never tested in a court of law. Thus, as a matter of law, these extrajudicial statements constitute an insufficient basis upon which to find that appellant committed the burglary.

Additionally, as in *Gould* and *Johnny G.*, there are other circumstances present which tend to discredit the witness' extrajudicial statements. ██ ██ ██ Arnaldo is an admitted accomplice in the burglary of the Ross home.[4] "[E]xperience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source . . . ." (*People* v. *Wallin* (1948) 32 Cal.2d 803, 808 [197 P.2d 734]; see also *People* v. *Belton, supra*, 23 Cal.3d at pp. 525-526; *People* v. *Gordon, supra*, 10 Cal.3d at p. 468.)

Even the sworn testimony of an accomplice in a formal judicial proceeding is considered suspect. (*People* v. *Belton, supra*, 23 Cal.3d at p. 526; *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 967 [127 Cal.Rptr. 135, 544 P.2d 1335].) Thus, when accomplice statements are not made under oath and in the presence of the factfinder, they "must be deemed even more suspect, untrustworthy and unreliable." (*People* v. *Belton, supra*, 23 Cal.3d at p. 526.)

Evidence from an accomplice is regarded as untrustworthy because it is likely to have been influenced by the self-serving motives of the witness. (*Ibid.*) Accomplice testimony is "often given in the hope or expectation of leniency or immunity." (*People* v. *Wallin, supra*, 32 Cal.2d at p. 808; see also Comment, *Accomplice Corroboration—Its Status in California* (1962) 9 UCLA L.Rev. 190, 192.) As a result, an accomplice has a strong motive to fabricate testimony which incriminates innocent persons or minimizes his participation in the offense and transfers responsibility for the crime to others. (*Heydon, The Corroboration of Accomplices* (Eng. ed.) 1973 Crim. L.Rev. 264, 265.)

---

[4]"'An accomplice includes all persons concerned in the commission of the offense, whether they directly commit the act constituting the offense or aid and abet in its commission.' [Citation.]" (*People* v. *Gordon* (1973) 10 Cal.3d 460, 468 [110 Cal.Rptr. 906, 516 P.2d 298].)

It is not unusual for an accomplice to falsely incriminate innocent persons to seek revenge or to protect friends who actually committed the crime with him. (*Ibid.*; see also Note (1954) 54 Colum.L.Rev. 219, 234.) Further, an accomplice, especially one who is a minor, "may be under great parental or social pressure to testify and to lay the blame for certain conduct or a certain condition on the accused." (Heydon, *supra*, at p. 276.)[5]

■ The circumstances of the present case suggest that Arnaldo's extrajudicial statements incriminating appellant may in fact have been motivated by some of the factors that render accomplice testimony untrustworthy. In exchange for his cooperation with the police and expected testimony in court, Arnaldo was granted immunity from prosecution in four burglaries, including the burglary of the Ross home. In addition, during the February 8th interview, Arnaldo expressed the hope that his willingness to provide information to the police would allow him "to go home on . . . supervision" rather than remain in custody.

Arnaldo's statements may also have been motivated by revenge or his personal dislike of appellant. Sergeant Anaya testified that at various times in the past Arnaldo and appellant had fought with each other.

The self-serving nature of Arnaldo's confessions further suggests the possible untrustworthiness of the evidence. In his version of the Ross burglary, Arnaldo places almost total blame for the crime on appellant, while portraying himself as virtually a passive observer of the incident.

Thus, the principles enunciated in *Gould* and *Johnny G.* mandate that Arnaldo's extrajudicial statements identifying appellant as a participant in the charged burglary be held insufficient as a matter of law

---

[5]Had appellant been an adult offender, he could not have been convicted of the charged offense. Penal Code section 1111 prohibits a conviction from being based solely on uncorroborated testimony or statements of an accomplice. (*People v. Belton, supra*, 23 Cal.3d 523-527.)

The state correctly points out that Penal Code section 1111 does not apply in juvenile court proceedings. (See *In re Mitchell P.* (1978) 22 Cal.3d 946 [151 Cal.Rptr. 330, 587 P.2d 1144].) However, the court's holding in *Mitchell P.* was based solely on the determination that a finding of wardship does not constitute a "conviction" within the meaning of Penal Code section 1111. (*Id.*, at p. 949.) No evidence exists "that accomplice testimony is more trustworthy, or less likely to be given in hope of leniency, simply because the person charged with an offense is a juvenile." (*In re R.C.* (1974) 39 Cal.App.3d 887, 895 [114 Cal.Rptr. 735].) Thus, the absence of the corroboration requirement in juvenile court proceedings has no relevance as to the reliability of Arnaldo's out-of-court statements and their sufficiency to sustain appellant's adjudication as a ward of the court.

to sustain the petition against appellant. Not only do the statements lack the traditional indicia of trustworthiness characteristic of sworn testimony made in a formal judicial proceeding, but, as accomplice evidence, they also come from a "tainted source." (*People* v. *Wallin, supra*, 32 Cal.2d at p. 808.)

The prosecution attempts to distinguish this case from *Gould* and its progeny by pointing to Arnaldo's unwillingness to "put the rap on somebody else" as the reason for his recanting the prior statements. However, it does not necessarily follow from Arnaldo's reluctance to be a "snitch" at the jurisdictional hearing that his prior statements implicating appellant in the Ross burglary are trustworthy. Arnaldo may have decided that since he was already incarcerated, he had nothing more to gain from continuing with a fabricated story. In any event, the minor's conduct at the jurisdictional hearing may in no way be construed as confirming the veracity of his extrajudicial statements implicating appellant.

In addition, Arnaldo's familiarity with the circumstances of the Ross burglary does not substantiate the reliability of his identification of appellant. This fact tends only to prove that Arnaldo was one of the burglars. It has no probative value with respect to the identity of Arnaldo's accomplice.

Finally, Sergeant Anaya's testimony that Arnaldo had a "fairly good" reputation for truth and veracity in the community is not helpful. This fact is not sufficient either to outweigh Arnaldo's status as an accomplice or to ensure that his accusations were reliable enough to sustain the petition against appellant.

### III.

To affirm appellant's wardship adjudication would require this court to hold that a finding of criminal conduct may be based solely on an accusation which not only lacks the traditional indicia of trustworthiness, but also comes from an unreliable source. Constitutional requirements of due process preclude this court from reaching such a holding. (*Jackson* v. *Virginia, supra*, 443 U.S. at p. 316 [61 L.Ed.2d at p. 571].)

As a matter of law, there was insufficient evidence introduced at the jurisdictional hearing to support a finding that appellant committed the

offense charged. Since the double jeopardy clause (U.S. Const., 5th Amend.) bars further proceedings, the order finding appellant a ward of the juvenile court is reversed with directions to the trial court to dismiss the proceedings. (*Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141]; *Greene* v. *Massey* (1978) 437 U.S. 19 [57 L.Ed.2d 15, 98 S.Ct. 2151]; *People* v. *Pierce* (1979) 24 Cal.3d 199, 209-210 [135 Cal.Rptr. 657, 595 P.2d 91].)

Mosk, J., Richardson, J., Broussard, J., Reynoso, J., Rattigan, J.,* and Feinberg, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.