[Crim. No. 42432. Second Dist., Div. Four. Jan. 6, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JOEY MALDONADO GARCIA, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Monica Knox, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, Otis D. Wright and Jennifer S. Cady, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**AMERIAN, J.**—Appellant Joey Maldonado Garcia, after jury trial, was convicted of murder of the second degree (Pen. Code, § 187).[1] The jury found that

---

[1] All references hereinafter are to the Penal Code.

appellant was armed with (§ 12022, subd. (a)) and used (§ 12022.5) a firearm. The court sentenced appellant to 15 years to life, the term prescribed by law for the principle offense, imposed enhancements for the armed and use allegations and stayed those enhancements pending service of the principle term. This appeal is from the judgment of conviction and sentence.

The sole contention on appeal is that the evidence was insufficient to support the conviction. ■ This point is urged by appellant on the strength of *People v. Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], which stands for the proposition that where a witness has been unable in trial to make an identification of the perpetrator of a crime, but has made a prior out-of-court identification, a conviction of the defendant will not stand "in the absence of other evidence tending to connect the defendant with the crime." (At p. 631.)

### FACTS

On the late evening of May 25, 1981, or the early morning of May 26, 1981, the victim Phillip Perez was killed by a .22 caliber gunshot wound to the head. The victim was shot around midnight on Evergreen Street in Ramona Gardens Project. The shots came from a vehicle which drove through the project. The vehicle had two persons inside. The passenger did the shooting. A .22 caliber round was removed from the victim's head.

There was no evidence that the victim was a member of any gang. There was evidence that appellant was a member of the Third Street gang and that on the afternoon of May 25, he went to a fellow gang member, Jose Hernandez, and asked to borrow a gun from Hernandez. Appellant related to Hernandez that when appellant took his wife and little girl home to Ramona Gardens earlier that day, "some guys from Hazard," a rival gang whose territory includes the area where his girlfriend lives, started shooting at him and threw a knife at appellant's car and hit his young daughter in the head. Hernandez refused to loan the weapon, a .22 rifle, to appellant and locked it in the trunk of his car. Later that evening Hernandez discovered that the rifle had been stolen from the car. The rifle was returned to the vehicle a few days later.

At 10 p.m. on May 25, appellant was with another member of "Thirds" in an Impala, burgundy on the bottom and blue on top. The car which drove by on Evergreen Street (Hazard territory) and from which shots were fired at the victim was, according to eyewitness Rosemary Torres, a burgundy or black car and, according to eyewitness Enrique Martinez, a two-tone "Monte Carlo to a Chevrolet."

According to appellant's girl friend, appellant was in a silver and burgundy vehicle when he dropped her off near her home in the late evening of May 25.

Several days after the shooting incident, appellant shaved off his facial hair, consisting of a mustache and goatee. One month after the shooting, the appellant told Ophelia Lopez, a sister of his girl friend and a neighbor of his brother, that "he was mad at the Hazard Street gang members for throwing a knife at his baby on the 25th of May, and that he went along with the Third Street gang members back down there. However, he did not do the shooting, one of his members did."[2]

No witness at trial testified as to the identity of the perpetrator of the homicide, although Rosemary Torres was in a position to see the gunman and had made an out-of-court identification of appellant as the gunman. Miss Torres was a 16-year-old who lived with her family in a two-story apartment in Ramona Gardens Project. Miss Torres had gone to school with another sister of appellant's girl friend and knew appellant before the incident. At the time of the shooting she was in an upstairs bedroom which faced the street where the shooting occurred. She testified that she was looking out the window, saw a car approach at 10 miles per hour and heard shots. She saw two people in the front seat. The car went up the street, proceeded in the opposite direction and passed in front of her apartment again. Miss Torres heard another shot.

Miss Torres told a police detective several days after the shooting that she could not identify anybody. A police officer testified that about a month later she told him she was positive defendant was in the passenger seat the first time the vehicle came by, although she could not be sure who was sitting where when the vehicle made its return trip. At trial, when asked if she made such statements one month after the incident, Miss Torres replied that she could not remember.

After the shooting Miss Torres was shown photographs by a police detective. She originally selected the photograph of a person other than appellant as the person who fired the shots. Approximately six weeks after the killing, in the district attorney's office in downtown Los Angeles, Miss Torres was shown additional photographs by investigators and selected appellant as the shooter.

At the preliminary hearing, Miss Torres stated she did not get a good look at the person who did the shooting and she did not identify anyone. At trial, she stated she did not see in the courtroom the passenger in the burgundy vehicle. She denied that she was afraid of appellant, although she admitted that she had theretofore told a detective she was afraid of appellant. She admitted on the

---

[2]According to the police, Mrs. Lopez related the conversation to them six weeks after the shooting. At trial, Mrs. Lopez denied having the conversation with appellant and denied telling police about such a conversation.

stand that the Thirds had hassled her once and threatened her once but stated that she was not afraid of Thirds.[3]

The interview in the district attorney's office was tape recorded and a portion of it was played to the jury at trial. In the interview, Miss Torres stated that she had seen appellant lean out of the vehicle and shoot a rifle in the early morning hours of May 26. However, on the stand, Miss Torres denied that the statement was truthful. She contended that she had made the statement to get the investigator to "stop bugging her" and because the police said they had appellant's fingerprints.[4] In a portion of the interview which was not recorded, Miss Torres told a deputy district attorney that she had identified the photograph other than appellant because she had been afraid to identify someone else. A few minutes later she identified appellant as the person who fired the shots on May 25.

## LAW

In *People* v. *Gould, supra,* 54 Cal.2d 621, two defendants were convicted of burglary. A woman returned to her apartment after a few minutes at the swimming pool area and confronted two men. One was on the steps outside her door and the other was inside her apartment. The man inside ordered her into the apartment. She complied. The two men ran away and she saw them again while looking out her window. Within an hour the police showed the victim seven to ten small photographs. She selected two. The photograph of defendant Gould was designated by her as the man inside her apartment. The photograph of defendant Marudas was selected as the person on the steps.

At trial the victim was unable to identify either Gould or Marudas. She said Gould had "some features but not all of the features" of the man inside the apartment but he seemed to be thinner than the burglar. She was not able to point to anyone in the courtroom as the one on the steps. She said that the picture she had chosen shortly after the crime "looked similar to the men who were in my apartment but not all the features were the same."

After arrest, Marudas denied any knowledge of the burglary while Gould admitted he had taken a few dollars from the location.

Each defendant appealed his conviction. Gould urged that he was not adequately identified as the man seen in the apartment. The Supreme Court af-

---

[3]Miss Torres admitted that after her testimony in the preliminary hearing, her life was threatened.

[4]No fingerprint evidence was introduced at trial.

firmed his conviction and held that the admission of the out-of-court photograph identification by the victim was not error. The court observed, "Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial [citation], but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached [citations], evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. [Citations.] The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination. [Citations.]" (*People* v. *Gould, supra,* 54 Cal.2d at p. 626.)

As to Marudas, however, the Supreme Court reversed the conviction. The court noted that, "An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime. [Citation.] Moreover, the probative value of an identification depends on the circumstances under which it was made. Mrs. Fenwick merely selected one of a small group of photographs. The small size of the group increased the danger of suggestion. [Citation.] Identification from a still photograph is substantially less reliable than identification of an individual seen in person. [Citation.] It becomes particularly suspect when, as in the present case, the witness subsequently fails to identify the subject of the photograph when seen in person and there is no other evidence tending to identify him." (*People* v. *Gould, supra,* at p. 631.)

In *In re Miguel L.* (1982) 32 Cal.3d 100 [185 Cal.Rptr. 120, 649 P.2d 703], the Supreme Court recently held that a minor could not be adjudicated a ward of the juvenile court where the only evidence connecting him to the charged offense, burglary, was a repudiated extrajudicial identification by a self declared accomplice who was also a minor and was in custody when he made the identification. The rationale was that the source of the out-of-court identification—an accomplice to the burglary—was a suspect one. In addition there was evidence that the witness had received favors in exchange for his testimony.[5]

---

[5]He was granted immunity from prosecution in four burglaries, including the burglary which was the basis of the petition against Miguel L.

The court noted, "Not only do the statements lack the traditional indicia of trustworthiness characteristic of sworn testimony made in a formal judicial proceeding, but, as accomplice evidence, they also come from a 'tainted source.' " (At p. 110.)

*People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401], involved a factual setting similar in some respects to the instant case. In *Chavez,* a blue car from the L.A. Clovers gang drove by Hazard gang territory in Ramona Gardens Project. Shots were fired from the car. No one was injured. Police were in the area, heard the shots and pursued the blue car. The blue car crashed and a .22 caliber rifle was thrown from the car. Five people, including defendant, exited the vehicle.

Defendant was charged with aggravated assault, with use of a firearm. At defendant's preliminary hearing one of the witnesses called by the prosecution was Gregory Angel, a member of Hazard gang. Angel testified at the preliminary hearing, although reluctantly, that he had seen defendant fire the shots from the blue car on the night in question. Prior to the preliminary hearing Angel had signed a written statement that defendant had fired the rifle from the right front passenger seat of the blue car. Two days after the shooting Angel had identified defendant to police officers as the shooter.

At defendant's trial, however, Angel testified that he had not seen who fired the shots from the blue car. He also denied that he had named defendant in the police interview as the one who shot the rifle from the blue car. Angel admitted that a few days before trial he had told the prosecutor that he did not want to testify and that he would "rather take care of this out on the street."

The evidence of Angel's prior identification of defendant was introduced at trial. The jury convicted defendant of the charged assault and also found that he used a firearm.

The Supreme Court in rejecting the claim that use of the out-of-court identification of defendant by Angel was insufficient evidence on which to base the finding of firearm use, observed, "The question thus becomes whether Angel's pretrial statements are sufficient to support the firearm use findings. Defendant argues vigorously that they are not, asserting that *Gould* and its progeny establish an absolute rule that any pretrial identification which is not confirmed by the witness at trial is *never* sufficient to sustain a conviction or an enhancement finding. We cannot agree. [¶] . . . [¶] Subsequent cases which have found prior inconsistent statements an insufficient basis to support a conviction have similarly involved situations in which the out-of-court statement's reliability was unsubstantiated and the record afforded no basis for concluding that the prior statement's probative value was any greater than the probative value

of the witness' testimony in court. . . . [¶] The instant case clearly differs from the foregoing decisions in a number of important respects. First, although Angel's identification of defendant to various police officers during the investigation of the crime is comparable to the identifications in *Gould, Johnny G.* and *Eugene M.* [(1976) 55 Cal.App.3d 650 (127 Cal.Rptr. 851)] and would not in itself be sufficient to support the firearm use findings, in the case at bar the jury additionally had before it a transcription of Angel's positive identification of defendant under oath at defendant's preliminary examination. As the portion of the transcript quoted above demonstrates, Angel, though reluctant to testify at the preliminary hearing, ultimately confirmed his identification of defendant when pressed by the questioning of the municipal court judge; defendant presented no evidence that Angel's identification of him at that time had been shaken or discredited by cross-examination. This sworn testimony at a formal, judicially conducted preliminary examination clearly provides a more substantial basis for the firearm use finding than the extrajudicial identifications in *Gould, Johnny G.,* or *Eugene M.* [Citation.] [¶] Moreover, unlike the prior cases in which the record contained no concrete basis to credit the witness' prior identification over his trial testimony, the prosecution in the instant case presented evidence which both explained and discredited the witness' inconsistent testimony at the time of trial. As discussed above, the evidence revealed that from the outset of the investigation Angel had indicated his unwillingness to testify in court because no one had been hurt by the shooting, and on the witness stand Angel forthrightly conceded that he had told the district attorney just days before the trial that he did not want to testify because he felt that the whole matter 'should be settled in the streets' rather than in court. In light of this evidence, the jury had a sound basis for discounting the witness' trial testimony and giving credence to his prior testimony against defendant." (*People* v. *Chavez, supra,* 26 Cal.3d at pp. 362-364.)

*In re Richard W.* (1982) 136 Cal.App.3d 733 [186 Cal.Rptr. 409], was a case in which an eyewitness to a burglary positively identified the minor to police on the evening of the offense. At distance of 25 feet, she had observed 4 boys at a gas station at midnight. She watched them and called police. Fifteen minutes later the police arrived and the boys were arrested. The witness identified the minor to police that night as one of the boys who entered the gas station.

At the juvenile court hearing, three months later, the witness was not sure of the identity of the minor because she could no longer remember what the boys looked like. She testified that she was positive of her identification on the evening in question.

The Court of Appeal rejected an attack on the judgment because of insufficiency of the evidence and observed that the witness to the burglary had never

repudiated her extrajudicial identification. Also there was nothing to discredit the extrajudicial identification. The witness was not an accomplice, had nothing to gain by her testimony, never refused to testify and never repudiated her story. She had a clear view of the escapade of the minors and watched them without interruption except for the few minutes when she called the police. She made her identification in person and not from a small number of photographs.

In *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196], the minor was adjudicated a ward of the court upon a finding that he committed assault with a deadly weapon. The victim, who testified at trial through an interpreter, lived three houses from the minor. One evening, the victim agreed to do the laundry of the minor for one dollar. When the victim returned from the laundry and was on his way home, he was assaulted and beaten by two persons. Before he lost consciousness, the victim heard one of the persons say something about missing clothing.

There was evidence that while he was on the ground, the victim had been approached by a police officer. The officer pointed to the minor, who was standing nearby and asked the victim in English if that was the man who attacked him. The victim replied, "Yes." At the juvenile court hearing, the victim testified that he did not remember speaking to a police officer at the scene of the assault or identifying the minor as one of the assailants. He stated that he did not know who attacked him.

The Supreme Court reversed the order, because the only evidence connecting the minor with the charged assault was an extrajudicial identification. The court stated, "The evidence in this case is insufficient to sustain the order under *Gould*. The only evidence connecting Johnny with the offense is the extrajudicial statement assertedly made by Herrera to Officer Cooney after the assault. At trial Herrera said he was unconscious, did not remember making this statement, and described his assailants as not resembling Johnny. Neither Herrera's acquaintance with Johnny nor Johnny's presence at the scene provides any reasonable support for the adjudication. No consciousness of guilt on the part of Johnny or intimidation of Herrera by him could reasonably be inferred from these factors." (At p. 548.)

## DISCUSSION

In the instant case there is an out-of-court identification of appellant but no in-court identification of him, either at the preliminary hearing or at the trial. The extrajudicial identification came from a witness who, prior to the incident, knew the person she was identifying. That witness, however, made at least four conflicting statements concerning the identity of the person who fired the shots from the vehicle: that she had not seen the person, that the person who fired the

shots was someone other than appellant, that appellant fired the shots and that she could not identify the shooter. When on the witness stand, under oath and subject to cross-examination, she failed to identify appellant as a person who was in the car from which shots were fired that evening.

Under *People* v. *Gould, supra,* 54 Cal.2d 621, we are obliged to examine the evidence to determine if there was, besides the extrajudicial identification, "other evidence tending to connect the defendant with the crime."

■ The evidence which might tend to link appellant with the offense included evidence (a) of his motive for revenge against the rival gang, (b) that the shooting took place in territory of the rival gang, (c) connecting him, within a few hours of the shooting, with a vehicle of the make and color of the vehicle from which shots were fired, (d) that on the afternoon of the shooting he sought to borrow a weapon (which was of the same caliber as that from which the fatal shot was fired), and (e) of his own statement to a sister of his girl friend one month after the shooting in which statement he admitted he went along with fellow gang members to the vicinity of the shooting (where he and his daughter had been accosted earlier in the day) but denied that he did the shooting. There is the additional evidence that appellant shaved his facial hair shortly after the shooting and that the gun appellant sought to borrow was stolen that day and returned a few days later, to connect appellant with the crime of murder of Phillip Perez.

Contrary to *People* v. *Chavez, supra,* 26 Cal.3d 334, the extrajudicial identification of appellant here is one which was not repeated at the preliminary hearing. In fact, the extrajudicial identification itself was contradicted not only extrajudicially when someone other than appellant was identified by the witness and when the witness stated she was unable to identify anyone, but also under oath when the witness stated she did not get a good look at the person who did the shooting and when the witness said she did not see the shooter in the courtroom.

There is missing from the extrajudicial identification by Rosemary Torres the veracity of the identification made in *In re Richard W., supra,* 136 Cal.App.3d 733. However, the source of the identification is not a suspect one, as was the source in *In re Miguel L., supra,* 32 Cal.3d 100. The many inconsistencies in identification by the witness, coupled with the witness' inability or unwillingness to make an identification of appellant when subject to the rigors of cross-examination, can be attributed to the threat on her life and to the hassling which came from the gang of which appellant was a member.

We hold that there was here present such other evidence tending to connect appellant with the crime as is required in *People* v. *Gould, supra,* 54 Cal.2d 621.

## Disposition

The judgment of conviction is affirmed.

Woods, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied January 18, 1983, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1983. Mosk, J., was of the opinion that the petition should be granted.