[Crim. No. 5855.   In Bank.   Feb. 15, 1957.]

THE PEOPLE, Respondent, v. DONALD MICHAEL
FOOTE et al., Appellants.

Raymond De Forest Johnson, in pro. per., Charles E. Karpinski, under appointment by the District Court of Appeal, Richard E. Adams, under appointment by the Supreme Court, Edgar G. Langford, J. Perry Langford, Robert O'Connor, and Barton C. Sheela, Jr., for Appellants.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

GIBSON, C. J.—After a jury trial, defendants Foote, Johnson and Curtis were found guilty of robbery in the first degree and of conspiracy to commit robbery. Each defendant appeals separately from the judgment of conviction and from the order denying his motion for a new trial.

On July 31, 1955, near 10 p. m., two men, whose faces were masked by silk stockings, threatened the cashier of a drive-in movie theater with guns and took about $800 from him. About 15 minutes afterwards, and some three miles from the theater, two police officers who had heard of the robbery stopped a 1950 Mercury automobile which contained three men. The owner, Foote, stepped out of the car and walked over to the officers, who ordered the other two men to step out with their hands in view. Instead the car was put in gear and sped away. The officers fired several shots at the automobile and, after getting Foote into their car, attempted pursuit. They were unable to overtake the Mercury automobile, but they found it unoccupied a few minutes later near Foote's home. Several rolls of coin had been left in the car, and one of them was marked "St. Brigid's Church," the same marking as that on some of the rolls taken from the theater.

Several hours before commission of the crime, the three defendants were together at the Foote residence. Foote's mother testified that her son left about 9 p. m. but that she did not know if anyone left with him. Later that evening, she heard a car door slam and a man's voice, which seemed to come from the car, call something like "Terry, hurry up or I am going to leave you," and she saw Johnson come into the entry hall and then leave. A few minutes afterward the police officers arrived with her son.

Johnson was apprehended on August 29, 1955. At first he denied that he had any part in the robbery but later, during lengthy questioning by police officers, he confessed, saying that he and Foote held up the cashier while Curtis,

who was "part of the operation," waited in the car. The purpose of the robbery, according to Johnson, was to obtain money to finance the smuggling of narcotics from Mexico. He admitted being with the other defendants in the automobile when it was stopped by the police officers and said that, after escaping from the officers, he and Curtis went to the Foote residence where he hid the two guns used in the robbery.

Unknown to Johnson, his statements to the police officers were recorded, and a portion of the recordings, lasting over four hours, was played to the jury. Before the recordings were offered in evidence defendants asked permission to review them. The court rejected the request but ordered the district attorney to delete any objectionable matter. Defendants were not permitted to make objections until after the recorded conversations were in evidence. They then made motions for mistrial which were denied. The jury was instructed, however, that the conversations were not binding on Foote and Curtis and were to be disregarded in considering the case against them.

Johnson repudiated the statements made in his confession which connected him with the robbery. He testified that he and Foote parted about 9 p. m., which was approximately an hour before the robbery was committed, and that he did not commit the robbery and was not in the automobile when it was stopped by the police. According to his testimony, he told the police officers that he robbed the theater because they promised that, if he made such a statement, his wife, who was then in jail, would not be prosecuted for having aided him to escape capture. The police officers testified that, although Johnson made numerous attempts to secure such an agreement, they repeatedly refused to deal with him, and their testimony is borne out by the recordings of the conversations.

Foote testified that he had been with Curtis and Johnson on the night of the robbery and that they were with him in the automobile when it was stopped by the police, but he denied that he participated in the robbery.

Curtis did not take the witness stand.

■ There is substantial evidence to support the determination that Johnson's confession was given voluntarily. He contends, however, that it was error to admit in evidence portions of the recordings containing statements pertaining to his parole violations, the desertion of his first wife, the

asserted invalidity of his second marriage, his association with criminal characters and his use of narcotics. Some of these statements were inadmissible, but his guilt was clearly established by other evidence and we are of the opinion that no miscarriage of justice resulted as to him by reason of the admission of the erroneous evidence. (See Cal. Const., art. VI, § 4½.)

The situation is quite different with respect to Foote and Curtis. The jury was permitted to hear the recorded statements by Johnson that Foote had narcotics in his home, that he sold them and used them and that his mother had believed that he was guilty of the robbery. There was also a statement by a police officer, which appears to be untrue, that Foote had pleaded guilty to a charge of smuggling narcotics. The recordings also contained statements by Johnson to the effect that Curtis used narcotics, committed "sneaky" crimes like burglary, enjoyed causing trouble between people to see them fight, had hoodlums intimidate Johnson's mother to keep Johnson quiet and had associated with Johnson in prison.

█ Where the jury is instructed that evidence is admitted only as to certain counts or as to certain defendants, it will ordinarily be presumed that the jury followed the instruction and that there was no prejudice. (*People* v. *Tarantino*, 45 Cal.2d 590, 597 [290 P.2d 505], and cases cited; *People* v. *Dabb*, 32 Cal.2d 491, 499 [197 P.2d 1].) █ Where, however, statements of a codefendant are admitted which are irrelevant or unnecessary in establishing a case against him and are extremely prejudicial and inadmissible hearsay as to a codefendant, they should be excluded from the evidence. (*People* v. *Zammora*, 66 Cal.App.2d 166 [152 P.2d 180].) In the Zammora case Mr. Justice White speaking for the court said, "Notwithstanding instructions of the court that such statements were not to be considered against codefendants named therein by the declarant, it is obvious, in the light of human experience, that the effect of such statements upon the jury would serve only to injure the cause of the codefendant so accused and against whom such statements were concededly inadmissible. The mutiplicity of such statements coupled with the number of defendants and the long duration of the trial could serve only to make more difficult the task of the jury in following the court's instructions not to consider such testimony save and except as to the defendants

who made the statements. . . . We do not want to be understood as holding that any admission or confession made by the declarant in these statements was not admissible, but we do hold that it is not permissible to get before the jury damaging and prejudicial, but inadmissible evidence against a codefendant, under the guise of introducing an admission or confession by someone else who has made a statement. The parts of such declarations containing accusatory and inadmissible statements against codefendants should have been excluded, and only those parts containing admissions against interest or confessions by a declarant or which were properly admissible for purposes of impeachment should have been admitted. To hold otherwise, would be to make possible a conviction upon what is purely hearsay and inadmissible but extremely prejudicial evidence. Notwithstanding the admonitions of the court, the prejudicial statements are nevertheless before the jury and to hope that they might be forgotten by the jury in their deliberations is to belie human nature and challenge human experience.'' (66 Cal.App.2d, pp. 211-212.)

The parts of the recordings which were played to the jury lasted for more than four hours, and none of the matters complained of was a necessary part of Johnson's confession. Some of the statements, such as the police officer's assertion that Foote had pleaded guilty to smuggling narcotics, were not admissible in the case against Johnson. Likewise irrelevant as to Johnson were the statements that Curtis committed ''sneaky'' crimes like burglary, enjoyed causing trouble between people to see them fight, and had hoodlums intimidate Johnson's mother to keep him quiet.

The accusations made by Johnson and the police were very prejudicial to Foote and Curtis, and it is extremely unlikely that in considering the case against them the jury could erase these inflammatory statements from their minds. Furthermore, the district attorney in his argument to the jury made no effort to distinguish the case against Johnson from that against Foote and Curtis in referring to the statements made by Johnson. Under these circumstances, the hearsay evidence undoubtedly weighed heavily against Foote and Curtis and may have been the determining factor which brought about their conviction. After reviewing the entire record, we must conclude that the admission of these statements resulted in a miscarriage of justice as to Foote and Curtis.

The judgment as to Johnson and the order denying him a new trial are affirmed. The judgments as to Foote and Curtis and the orders denying them a new trial are reversed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.