[Crim. No. 6617. In Bank. Aug. 23, 1960.]

THE PEOPLE, Respondent, v. JEWELL ASHBY GOULD et al., Appellants.

George Stahlman, Earle K. Stanton, Max Solomon, John J. Bradley, Palmer & Long and Dermot R. Long for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

TRAYNOR, J.—A jury found defendants Jewell Ashby Gould and Andrew Peter Marudas guilty of burglary in the second degree. Each defendant appeals from the judgment of conviction and from the denial of his motion for a new trial.

At the trial Mrs. Marguerite Fenwick testified that at noon on August 26, 1958, she left her apartment on Shoreham Drive and went to the swimming pool. When she returned about six minutes later for suntan oil, she saw a man standing on the steps outside her door and found the door slightly ajar. She saw a second man in her apartment who shouted: "Go

into the bedroom and stay there.'' She walked towards the bedroom and heard the front door close behind her. Looking out the window she saw the same two men running away. She subsequently noticed some coins on the floor and discovered that about $15 was missing from her purse.

About 1 p. m. Officer Brewer arrived and showed Mrs. Fenwick seven to ten small photographs. She selected two— one of Marudas as the man on the steps and one of Gould as the man inside her apartment. On several subsequent occasions she identified the same two photographs or enlargements thereof.

Officer Cataldi testified that when arrested Gould at first denied knowledge of any burglary on Shoreham Drive. On being told that an eyewitness had identified him Gould said: ''I know what you are talking about.'' He admitted taking ''a few dollars'' from the location and stated: ''I don't recall whether I shimmed the door or the door was legally unlocked.'' When asked about his accomplice he said: ''Why don't you check Pete? . . . Pete Lombardi.'' Marudas at all times denied having any knowledge of the burglary.

At the trial Mrs. Fenwick pointed out Gould as having ''some features but not all of the features'' of the man she saw inside her apartment, and added that he seemed thinner than the burglar. She stated that she was unable to point out anyone in the courtroom as the man she saw on the steps. She also said that the pictures she selected shortly after the crime ''looked similar to the men who were in my apartment but not all the features were the same.'' Officer Brewer testified on cross-examination, however, that Mrs. Fenwick was sure of her identifications of the photographs at the time she first selected them.

## GOULD'S APPEAL

Gould contends that the evidence was insufficient to sustain the verdict in that he was not adequately identified as the man Mrs. Fenwick saw in her apartment. It is true that Mrs. Fenwick's identification of Gould was inconclusive. Her testimony, however, adequately established that a burglary had been committed. Gould's admissions after his arrest could therefore be used to identify him as one of the burglars (*People* v. *Amaya,* 40 Cal.2d 70, 75-76 [251 P.2d 324]; *People* v. *Mehaffey,* 32 Cal.2d 535, 544-545 [197 P.2d 12]; *People* v. *Griffin,* 98 Cal.App.2d 1, 46-47 [219 P.2d 519]), and sustain the jury's finding that he participated in the crime.

Gould contends that the trial court erred in admitting evi-

dence that Mrs. Fenwick identified his photograph shortly after the crime. He asserts that Mrs. Fenwick did not identify him at the trial and that evidence of an extrajudicial identification is admissible only to corroborate an identification made at the trial by the same witness.

Mrs. Fenwick testified that Gould had ''some features but not all of the features'' of the burglar. She stated that ''the man who was in my apartment seemed to have— he was a heavy man; he had rather fat cheeks and this man is very thin.'' Gould testified that after his arrest he became ''very ill'' and that he had ''hernia trouble,'' but he denied that he had lost weight. Mrs. Fenwick also testified that ''. . . it is awfully hard for me to point to someone after all of this time, saying that that is the person who looks like that person because my memory is rather vague about it now.'' Although her testimony did not amount to an identification, the evidence of her extrajudicial identification was nevertheless admissible.

Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial (*People* v. *Slobodion,* 31 Cal.2d 555, 560 [191 P.2d 1]), but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached (*People* v. *Hardenbrook,* 48 Cal.2d 345, 351 [309 P.2d 424] ; *People* v. *Kynette,* 15 Cal.2d 731, 753-754 [104 P.2d 794]), evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. (*People* v. *Slobodion,* 31 Cal.2d 555, 559-560 [191 P.2d 1] ; *United States* v. *Forzano,* 190 F.2d 687, 689; see *People* v. *Hood,* 140 Cal. App.2d 585, 588 [295 P.2d 525] ; *People* v. *Bennett,* 119 Cal. App.2d 224, 226 [259 P.2d 476] ; 4 Wigmore, Evidence (3d ed. 1940), § 1130, p. 208.) The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination. (See *Judy* v. *State,* 218 Md. 168, 174-175 [146

A.2d 29, 32-33] ; McCormick, Evidence, § 39, p. 74; Morgan, *Hearsay Dangers,* 62 Harv.L.Rev. 177, 192-193; 3 Wigmore, Evidence (3d ed. 1940), § 1018, pp. 687-688. See also *State* v. *Wilson,* 38 Wn.2d 593, 617-618 [231 P.2d 288, 300-301] ; *People* v. *Spinello,* 303 N.Y. 193, 201-202 [101 N.E.2d 457, 460-461].)

Gould contends that the trial court erred in denying his motion to declare a mistrial. Officer Cataldi testified that he and other officers arrested Gould at his home on September 5, 1958, at approximately 10 p. m. On cross-examination defense counsel brought out that Gould's wife and her 14-year-old son were taken into custody at the same time, that they were not released until 5 a. m. the next morning, and that no charges were filed against them. By his questions counsel suggested that Gould was aware of their detention and was disturbed by it during the period in which he allegedly admitted committing the burglary. On redirect examination the assistant district attorney asked if there was any reason for arresting Gould's wife and her son. Over defendant's objection the officer replied that a search of Gould's home following his arrest revealed "numerous fur pieces." Defendant's motion to strike this answer was granted and the jury was admonished to disregard the answer and any inference to be drawn therefrom. Defendant then moved to declare a mistrial, contending that the prejudicial effect of the officer's testimony could not be cured by a mere admonition.

 The testimony elicited by defense counsel on cross-examination gave rise to an inference that Gould's wife and her son were improperly detained for the purpose of inducing Gould to confess.[1] The prosecution was entitled to rebut this inference by eliciting a different explanation for their arrest. We assume that the proffered evidence was struck because the trial court found that its prejudicial effect exceeded its probative value. Even on this assumption, however, it does not follow that a mistrial should have been declared. The reference to "fur pieces" was brief and vague in its implications; it was struck immediately; the jury was admonished to disregard it; and further argument on the point took place out of the jury's hearing. It must be assumed that ordinarily admonitions to the jury are heeded. (*People* v. *Foote,* 48 Cal.2d 20, 23 [306 P.2d 803] ; *People* v. *Tarantino,* 45 Cal.2d 590, 597-598 [290 P.2d 505] ; *People* v. *Dabb,* 32

---

[1] On this appeal, however, Gould does not contend that his admissions were involuntary.

Cal.2d 491, 499 [197 P.2d 1].) A trial court's decision that an error or impropriety can be cured by admonition will not be reversed unless exceptional circumstances make it improbable that the jury obeyed the admonition. (See *People* v. *Foote*, 48 Cal.2d 20, 24 [306 P.2d 803]; *People* v. *Zammora*, 66 Cal.App.2d 166, 212 [152 P.2d 180].) No such circumstances appear in the present case.

 Gould asserts that two days before giving the testimony as to fur pieces Officer Cataldi gave similar testimony and that the same trial judge at that time granted defendants' motion to declare a mistrial. Gould contends that the trial court's rulings were inconsistent and that the prosecution committed wilful misconduct in reintroducing testimony previously held inadmissible. At the second trial, however, the testimony was arguably admissible to rebut the inference of impropriety raised by defense counsel. The record of the first trial is not before us and we are not aware of the circumstances preceding the earlier ruling. The trial judge stated that the two situations were not "in the same category" and did not have "the same seriousness." Accordingly, no inconsistency or wilful misconduct appears.

Gould contends that his identification as one of the burglars depended chiefly on circumstantial evidence and that the trial court therefore erred in refusing to give certain standard instructions on circumstantial evidence.[2] Since Mrs. Fenwick's identification of Gould was equivocal, proof of his connection with the crime depended on testimony as to his extrajudicial admissions. Such testimony is direct evidence that the admissions were made but indirect evidence of the truth of what was admitted. (Code Civ. Proc., § 1832; *People*

[2]The following instructions were requested by Gould and refused by the trial court:

"If the evidence in this case [as to any particular count] is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of defendant's innocence, and reject that which points to his guilt.

"You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.

"I instruct you further that you are not permitted, on circumstantial evidence alone, or when circumstantial evidence is substantially relied on

v. *Koenig,* 29 Cal.2d 87, 91 [173 P.2d 1].) We have concluded, for reasons that appear below, that the requested instructions do not apply to all types of indirect evidence and that they were properly refused in the present case.

 The requested instructions clarify the application of the general doctrine requiring proof beyond a reasonable doubt to a case in which the defendant's guilt must be inferred from a pattern of incriminating circumstances. (See *People* v. *Rayol,* 65 Cal.App.2d 462, 465 [150 P.2d 812]; *People* v. *Hatchett,* 63 Cal.App.2d 144, 154-155 [146 P.2d 469].) They deal with proof of "each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt," the use of evidence "susceptible of two constructions or interpretations," and the relationship required between "the proved circumstances" and possible hypotheses. Such instructions should not be given when the problem of inferring guilt from a pattern of incriminating circumstances is not present.

 Testimony as to an extrajudicial admission is indirect evidence of the matter admitted because the jurors are called upon not only to believe what is said in court—that the admission was made—but to infer that the admission was true. (*People* v. *Koenig,* 29 Cal.2d 87, 91 [173 P.2d 1].) Thus such testimony is indirect evidence only because it is hearsay.

 The requested instructions on circumstantial evidence clearly do not refer to the problem of evaluating hearsay. They are unnecessary, and may be misleading, when the jury is to consider only whether the admission was made, and if made, whether it was true. (*People* v. *Bretagna,* 298 N.Y. 323, 326 [83 N.E.2d 537, 538]; see Morgan, *Admissions and the Hearsay Rule,* 30 Yale L.J. 355, 356-358.)

 Other jurisdictions agree, though on somewhat different grounds, that the standard instructions on circumstantial evidence are not applicable to evidence of extrajudicial admissions. (Annot., 40 A.L.R. 571; 22 C.J.S., § 530, p. 839, § 816 subsec. a., p. 1422 and Supp. 1960, p. 313; 1 Underhill,

in the People's case, to find the defendant guilty of [the] [any] crime charged against him unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the crime, but are irreconcilable with any other rational conclusion.

"When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt."

Criminal Evidence (5th ed. 1956), § 19, p. 27.) Research has failed to reveal any case from another jurisdiction holding otherwise, except *Damas* v. *People*, 62 Colo. 418 [163 P. 289, L.R.A. 1917D 591], which was expressly overruled in *Mitchell* v. *People*, 76 Colo. 346 [232 P. 685, 40 A.L.R. 566].

In *People* v. *Koenig*, 29 Cal.2d 87 [173 P.2d 1], we noted that section 1832 of the Code of Civil Procedure cites testimony as to an extrajudicial admission as an example of "indirect evidence" and we concluded that the refusal to give a requested instruction on circumstantial evidence was erroneous. In that case, however, the prosecution relied heavily on proof of incriminating circumstances other than the defendant's alleged admissions. The requested instruction on circumstantial evidence was appropriate there without regard to the testimony as to admissions, since the jury might have believed the defendant's denial that he made the admissions and yet have inferred his guilt from the other incriminating circumstances alone. (*People* v. *Hatchett*, 63 Cal.App.2d 144, 153 [146 P.2d 469]; see *People* v. *Zerillo*, 36 Cal.2d 222, 233 [223 P.2d 223]; *People* v. *Simeone*, 26 Cal.2d 795, 807 [161 P.2d 369].) Since the statutory definition of "indirect evidence" includes both hearsay and presumptions (Code Civ. Proc., §§ 1957-1963), to which the requested instructions on circumstantial evidence obviously do not apply, it could not have been its purpose to affect the giving of those instructions. Any statements or implications to the contrary in *People* v. *Koenig*, *supra*, and *People* v. *Candiotto*, 128 Cal.App.2d 347 [275 P.2d 500], are disapproved.

Gould's contentions are without merit and his conviction must be affirmed.

### MARUDAS' APPEAL

Marudas contends that the evidence tending to identify him as the man Mrs. Fenwick saw on the steps outside her apartment was insufficient to sustain his conviction. Mrs. Fenwick testified that she was unable to point out anyone in the courtroom as the man she saw on the steps. Gould did not identify Marudas as his accomplice, but suggested that the police check one "Pete Lombardi." Unlike Gould, Marudas at all times denied having any knowledge of the burglary. The People contend, however, that Marudas' conviction should be sustained on the basis of an allegedly evasive statement made by him at the time of his arrest and Mrs. Fenwick's extrajudicial identification of his photograph.

When asked upon arrest where he had been on the

day of the crime, Marudas allegedly replied: "I don't know, but by the time I get to court I will have four or five people to place me where I want to be." The People contend that this answer was so evasive and equivocal that the jury could properly infer consciousness of guilt. The cases cited by the People, however, involved statements of fact that were incredible, later proved false, or contradicted by the defendant's subsequent testimony. (*People* v. *Wissenfeld*, 36 Cal.2d 758, 761-763 [227 P.2d 833]; *People* v. *Cole*, 141 Cal. 88, 89-90 [74 P. 547]; *People* v. *Turner*, 86 Cal.App.2d 791, 800-801 [195 P.2d 809].) Such statements give rise to inferences of attempted concealment and consciousness of guilt. No comparable falsification or evasion was shown in the present case and consciousness of guilt could not reasonably be inferred. The only evidence tending to connect Marudas with the burglary, therefore, was the evidence of Mrs. Fenwick's extrajudicial identification of his photograph.

An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime. (See *Reamer* v. *United States*, 229 F.2d 884, 886.) Moreover, the probative value of an identification depends on the circumstances under which it was made. Mrs. Fenwick merely selected one of a small group of photographs. The small size of the group increased the danger of suggestion. (See 3 Wigmore, Evidence (3d ed. 1940), § 786*a*, p. 164.) Identification from a still photograph is substantially less reliable than identification of an individual seen in person. (See *id.*, pp. 165-166.) It becomes particularly suspect when, as in the present case, the witness subsequently fails to identify the subject of the photograph when seen in person and there is no other evidence tending to identify him.

The judgment and order denying a new trial are affirmed as to defendant Jewell Ashby Gould and reversed as to defendant Andrew Peter Marudas.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., Dooling, J., and Coughlin, J. pro tem.,* concurred.

Respondent's petition for a rehearing was denied September 20, 1960. Coughlin, J. pro tem.,* participated therein in place of White, J.

---

*Assigned by Chairman of Judicial Council.