Filed 9/8/16  In re Zachary S. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ZACHARY S., a Person Coming Under the Juvenile Court Law. | B267148 |
| | (Los Angeles County Super. Ct. No. YJ38264) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| ZACHARY S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Irma J. Brown, Judge.  Affirmed.

Law Offices of Arthur J. LaCilento and Arthur J. LaCilento for Defendant and Appellant Zachary S.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Tasha G. Timbadia, Deputy Attorney General, for Plaintiff and Respondent.

After an evidentiary hearing, the juvenile court found defendant and appellant Zachary S. (Zachary) violated Penal Code section 245, subdivision (a)(4),[1] which criminalizes assault by means of force likely to produce great bodily injury. The charge against Zachary was predicated on evidence he participated with two other juveniles in punching and kicking a man who was walking to work early one morning. We are asked to decide whether there was sufficient evidence to identify Zachary as one of the participants, notwithstanding the victim's inability to identify him in court, and whether the evidence was sufficient to establish the element of the offense that requires proof of force likely to produce great bodily injury.

## I. BACKGROUND

### A. The Offense Conduct

Early one morning in March 2015, at approximately 3:45 a.m., Sebastian Bernardo (Bernardo) was walking to work in Santa Monica, California. One young man, shortly thereafter joined by two others, began following Bernardo. The three young men approached Bernardo from behind and pushed him to the ground. Over the next several minutes, no more than five, the assailants kicked and punched Bernardo in multiple areas of his body, and Bernardo thought they were going to kill him. He suffered bruises all over his body, and had cuts, bruises, or scrapes on his head and his knee in particular. While the attack was underway, Bernardo's cell phone fell out of a holster onto the ground. One of the attackers grabbed the cell phone and ran off, and the other two followed shortly thereafter.

Before and during the assault, Bernardo did not get a "good look" at his attackers' faces; while he was being kicked and punched, he was covering his face with his arms and could not see clearly. However, once the three young men "took off" running at the end of the assault, they turned back to look at Bernardo and Bernardo saw their faces and what they were wearing.

---

[1] Undesignated statutory references that follow are to the Penal Code.

2

Bernardo asked another person to call the police when the attack was over. Within "a few minutes" of a dispatch call received at 4:00 a.m., Santa Monica Police Officer Diaz spotted Zachary and two other young men (also charged as co-minors in this case) walking together about two blocks from where the assault occurred; there was no one else in the vicinity at that time of the morning. Diaz detained all three young men.

Meanwhile, Santa Monica Police Officer Prado had responded to the scene of the assault and he spoke with Bernardo about what happened. Bernardo described his three assailants as thin, male, Latino, and between the ages of 18 and 20. He also described the clothes that he recalled each wearing: a brown shirt and black pants for one of the attackers, later identified as Zachary; black pants, with a black sweater and backpack for another; and black pants, a white t-shirt, and a blue backpack for the third attacker. Bernardo declined medical assistance because he was late for work and couldn't afford an ambulance or doctor.

Twenty-five minutes after the police arrived on the scene and made contact with Bernardo, Officer Prado took Bernardo to the area where the juveniles had been detained to conduct a field show-up, i.e., a procedure where Bernardo was asked to look at the detained young men to see if he could identify them as his assailants. At the time, the three minors were sitting on a street curb and they were not handcuffed. Prior to conducting the field show-up, Officer Prado admonished Bernardo with "the standard witness identification form."[2] The police asked Bernardo to look at the juveniles one-by-one and as a group, and Bernardo identified Zachary and the two other young men as the individuals who attacked him. Bernardo told the police he recognized the minors by their "faces" and their "clothing."

---

[2]  Officer Prado was not asked to describe the content of the witness identification form while testifying during the juvenile court adjudication hearing.

## B. *Proceedings in the Juvenile Court*

The People filed Welfare and Institutions Code section 602 petitions charging Zachary and his two co-minors with second degree robbery (count 1), assault with a deadly weapon (count 2), and assault by means likely to produce great bodily injury (count 3). The cases involving all three minors were adjudicated together at a contested evidentiary hearing.

Under questioning on direct examination, Bernardo identified one of the three minors in court, Xavier W., as one of his attackers. Bernardo did not make an in-court identification of Zachary or the third minor, but Officer Prado testified Bernardo previously identified Zachary (and the third minor) during the field show-up.

On cross-examination, counsel for the three minors asked Bernardo about the description of the young men he provided to the police, the circumstances of the field show-up, and the injuries he suffered as a result of the attack. As to the descriptions, defense counsel established Bernardo's description of the assailants' clothing varied from what the three young men were actually wearing when apprehended by the police. As to the field show-up, when defense counsel asked whether the police told Bernardo "we've got those guys" before taking him to view the minors, Bernardo said yes; Bernardo also agreed when defense counsel asked whether he identified Zachary and the other minors based on that statement by the police and the fact that the field identification occurred so close in time to when the assault happened. Later when the defense cross-examined Officer Prado, however, the officer explained he may have told Bernardo the police had suspects detained, but Prado did not tell Bernardo the police "have the guys that did this." Officer Prado also testified, as did Bernardo himself, that Bernardo recognized each of the three minors as the perpetrators by their faces and their clothing. Finally, on the subject of his injuries from the assault, when one of the attorneys for the minors asked Bernardo whether he was so physically hurt that he had to be taken by ambulance or have medical assistance when the police responded, Bernardo said: "At that time, no. But after. [¶] . . . [¶] I was in pain."

4

When the presentation of evidence concluded, the juvenile court granted defense motions to dismiss the count 1 robbery charge and the count 2 assault with a deadly weapon charge for insufficient evidence. The juvenile court found true the count 3 charge for assault by means likely to produce great bodily injury, explaining the basis for its finding in part as follows: "It's four o'clock in the morning and the victim is being beaten, but shortly thereafter he is able to make an identification in the field. There is testimony that the field admonition was given. [¶] I know counsel attempted to make some point during cross-examination with regard to the field I.D. but the witness testified that the three suspects were the ones who were in the attack, went in the direction they were found shortly thereafter. He was able to make an identification based on clothing and on facial recognition. He made his in-court identification . . . as to minor [Xavier W.]. He's in the company of the other two minors and he identified immediately following the time of the incident."

## II. DISCUSSION

This is a sufficiency of the evidence appeal, and Zachary challenges the juvenile court's findings on two fronts. Under the applicable substantial evidence standard of review, we hold, first, there was sufficient evidence to identify Zachary as one of the assailants, including Bernardo's out-of-court identification of Zachary and his in-court identification of another of the attackers who was in Zachary's company when police detained all three young men near in time and geographic proximity to the early morning assault. We also hold, second, the evidence was sufficient to prove the assault on Bernardo was undertaken with force likely to produce great bodily injury.

### A. *Standard of Review*

A juvenile court makes a jurisdictional finding under Welfare and Institutions Code section 602 based on the beyond a reasonable doubt standard. (Welf. & Inst. Code § 701.) In an appeal challenging the sufficiency of the evidence before the juvenile court, "we review the entire record in the light most favorable to the judgment to determine

5

whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  We determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  In so doing, a reviewing court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Williams* (2015) 61 Cal.4th 1244, 1281, internal quotation marks and citations omitted; *In re V.V.* (2011) 51 Cal.4th 1020, 1026.)  "'[I]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment.  [Citation.]'"

### B. *Substantial Evidence of Identity*

"The law permits the use of in-field identifications arising from single-person show-ups so long as the procedures used are not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." (*People v. Garcia* (2016) 244 Cal.App.4th 1349, 1359; see also *In re Carlos M.* (1990) 220 Cal.App.3d 372, 386-387.) Zachary did not move to exclude admission of Bernardo's out-of-court identification of him as the product of an unduly suggestive procedure.  Instead, his argument in the juvenile court (and now on appeal) is that Bernardo's identification should be given no weight for a host of reasons: because the show-up procedure was suggestive, because Bernardo's description of his assailant's clothing did not match what Zachary and the other juveniles were wearing, and because Bernardo failed to identify Zachary in court.  This is not a winning argument under the applicable standard of review.

"Identification of [an individual] by a single eyewitness may be sufficient to prove the [individual's] identity as the perpetrator of a crime.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 570–575, 106 Cal.Rptr.2d 575, 22 P.3d 347 (*Anderson* ).)  Moreover, a testifying witness's out-of-court identification is probative for that purpose and can, by itself, be sufficient evidence of the [individual's] guilt even if the witness does not

confirm it in court.  (*People v. Cuevas* (1995) 12 Cal.4th 252, 263–275, 48 Cal.Rptr.2d 135, 906 P.2d 1290 (*Cuevas*), overruling *People v. Gould* (1960) 54 Cal.2d 621, 631, 7 Cal.Rptr. 273, 354 P.2d 865; see Evid. Code, § 1238.)"  (*People v. Boyer* (2006) 38 Cal.4th 412, 480.)  After a full presentation of evidence, including cross-examination of Bernardo and the two police officers at length on the issue of identity, the juvenile court credited Bernardo's field identification of Zachary, and that identification is substantial evidence supporting the court's jurisdictional finding against him.  (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497 [reviewing court defers to trier of fact's decision to believe eyewitness identification "when the circumstances surrounding the identification and its weight are explored at length at trial"]; see also *People v. Mohamed* (2011) 201 Cal.App.4th 515, 522 ["'The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, the uncertainty of recollection, and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance . . . .' [Citation.]"].)

Because circumstantial evidence corroborates Bernardo's out-of-court identification, we reach this conclusion even assuming the field show-up procedure was suggestive to a degree and despite the discrepancies between Bernardo's description of Zachary's clothing and what he was actually wearing.[3]  Police apprehended Zachary just minutes after the attack and within about two blocks of where it occurred.  Moreover,

---

[3]     The suggestiveness to which we refer is that inherent in any one-person show-up, not suggestiveness particular to this case.  We recognize Bernardo agreed when defense counsel asked if the police told him "we've got those guys" before asking him to participate in the field show-up.  Officer Prado, however, testified he might have used the term "suspects," but he gave Bernardo a witness admonition before the show-up and at no time told him officers had detained the "guys that did this."  The juvenile court could have reasonably understood Officer Prado's testimony as a clarification of sorts of Bernardo's answer on cross; of course, if the juvenile court believed there was a true conflict in the testimony, it could also have reasonably decided to believe Prado's testimony over Bernardo's.

Zachary was with two other minors when he was apprehended—at about 4:00 a.m. with no one else in the area at that time of the morning—and Bernardo did identify one of the two other juveniles in court as one of his attackers.

### C. Substantial Evidence of Force Likely to Result in Great Bodily Injury

Zachary additionally argues there was insufficient evidence he assaulted Bernardo with force likely to produce great bodily injury. He emphasizes, in particular, there was no testimony that he used a weapon or was wearing steel reinforced boots, and that the prosecution introduced no photos or medical records to corroborate the bruises, cuts, or injuries Bernardo suffered.

The assault by means of force likely to produce great bodily injury statute, section 245, subdivision (a)(4), requires proof of a likelihood that force used in an assault will produce great bodily injury, not proof that such injury in fact occurred. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) "Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) A trier of fact may consider the injuries resulting from an assault, as they are often indicative of the amount of force used, but the nature of the injuries themselves are not conclusive. (*Id.* at pp. 1065-1066.) "Abrasions, lacerations, and bruising can constitute great bodily injury." (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1042; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836.)

Here, the three-on-one assault that lasted several minutes and targeted Bernardo's head among other areas of his body involved the use of force likely to cause great bodily injury. (*People v. Aguilar, supra*, 16 Cal.4th at p. 1028 ["That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established"]; *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161-1162 [single blow with a fist to face of victim sufficient evidence for finding juvenile committed assault by means of force likely to produce great bodily injury].) The assault was sufficiently intense to cause Bernardo to think during the attack that Zachary and his two confederates were going to kill him. Bernardo further testified he suffered bruising

all over his body, as well as cuts or scrapes.  The juvenile court was entitled to credit that testimony, and corroborating photographs depicting his injuries are not necessary when reviewing the judgment in the light most favorable to the juvenile court's findings.  It is also immaterial that Bernardo did not seek immediate medical attention; he testified he had to get to work and could not afford an ambulance or doctor, but he described being in pain later.  There was substantial evidence Zachary used force likely to cause great bodily injury.

## DISPOSITION

The juvenile court's order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

TURNER, P.J.

RAPHAEL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.