Filed 2/11/26  P. v. Padilla CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083583 |
| v. | (Super.Ct.No. INF2200689) |
| JUAN ARELLANO PADILLA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge. Affirmed.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Colette C. Cavalier and Emily Reeves, Deputy Attorneys General, for Plaintiff and Respondent.

In 2020 a jury convicted Juan Arellano Padilla of burglary, robbery, and assault with a deadly weapon. Padilla appeals, arguing the trial court erred by admitting the victim's out-of-court statements under a hearsay exception. We affirm.

BACKGROUND

Padilla and his victim, Maricela A., knew each other because Padilla visited her neighbor "a lot." In July 2020, Maricela A. was at home alone when she heard banging on her door. She looked out a window and saw Padilla, his girlfriend Joanne, and two other women—Jeanette T. and Jessica T.—trying to get into her home. The four yelled at Maricela A. to open the door, and Maricela A. hid in the bathroom. She heard a window breaking and then heard the four assailants trying to break down the bathroom door.

Padilla eventually kicked the bathroom door down, and he and the others began to beat Maricela A., with Padilla and at least one other assailant using baseball bats they found in the home. Padilla then went through her home, destroying various items. While Padilla traversed the house, Joanne T. and one other woman continued hitting Maricela A., with Joanne T. using one of the two baseball bats. When the beating finally stopped, Padilla threatened Maricela A. with a machete he found in the home, and told her "that's what happens because you got in with the wrong person." Maricela A. did not know to what Padilla was referring. Maricela A. saw no one take anything from her home, but she noticed things missing after the fact, including the machete.

After the assailants left, Maricela A. tried to get help. First, she went to a nearby parked car, but the car left. Another person said they could not take her to the hospital

2

because their car was broken, and a third said he could not because he just got back from the hospital. A fourth person refused to help because they did not want any contact with the police. Maricela A. eventually had to walk about 30 minutes to a store, arriving an hour or two after the attack. Store security helped her and called the police.

The responding officer recorded his interaction with Maricela A. on his body-worn camera. Maricela A. identified Padilla as her assailant. Police went to Padilla's residence. As soon as they arrived, Jeanette T. and Joanne T. ran away, while Jessica T. stayed in a white Hyundai, later identified as Jeanette T.'s car. Police eventually executed a search warrant on Jeanette T.'s car and found a metal baseball bat, a machete, and an extra-large sized tank top shirt with a red substance on it.

In March 2023, the Riverside County District Attorney charged Padilla with burglary (Pen. Code § 459),[1] robbery (§ 211) and assault with a deadly weapon (§ 245, subd. (a)(1)). The information also alleged someone other than Padilla was present during the commission of the burglary (§ 667.5, subd. (c)(21)), that he personally inflicted great bodily injury during the robbery and the assault (§§ 12022.7, subd. (a)), and that he used a deadly weapon in connection with the robbery (§ 12022, subd. (b)(1)).

Before trial, the prosecution moved in limine to have the police body camera footage containing Maricela A.'s statements admitted under the excited utterance exception to the rule against hearsay. Padilla opposed this request. After viewing the footage, the court granted the prosecution's motion and admitted the evidence. The court

---

[1] Unlabeled statutory citations refer to the Penal Code.

reasoned that "[s]he was under extreme emotion. She looked like she was terrified, horrified and . . . in a considerable amount of pain." In the court's view, this meant it was unlikely that she was making anything up or lying and was still "acting under her injuries."

The jury returned guilty verdicts on all charges and found true all enhancement allegations. Padilla appealed the judgment.

ANALYSIS

Padilla argues the trial court erred by admitting Maricela A.'s statements in the body-worn camera footage of her talking to the responding officers. Specifically, he argues her statements do not fall under the excited utterance hearsay exception because they occurred well after the incident. We conclude that the statements were admissible under the hearsay exception for prior identifications, and, in any event, erroneous admission of them would be harmless here.[2]

"Whether an out-of-court statement meets the statutory requirements for admission as a spontaneous statement is generally a question of fact for the trial court, the determination of which involves an exercise of the court's discretion. [Citation.] We will uphold the trial court's determination of facts when they are supported by substantial

---

[2] Padilla briefly argued below that the admission of the footage was more prejudicial than probative and should have been excluded under Evidence Code section 352. However, on appeal Padilla argues only that the statements in the footage are not excited utterances and therefore should have been excluded on that ground and does not raise Evidence Code section 352.

evidence and review for abuse of discretion its decision to admit evidence under the spontaneous statement exception." (*People v. Merriman* (2014) 60 Cal.4th 1, 65.)

" 'To render [statements] admissible [under the excited utterance exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' " (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) Padilla argues only that the second element was not met here because the statements happened more than an hour after the incident. However, "[b]ecause the second requirement relates to the peculiar facts of the individual case more than the first or third does . . . the discretion of the trial court is at its broadest when it determines whether this requirement is met." (*Id.* at pp. 318-319.) We review the court's determination of any preliminary facts for substantial evidence, and its ultimate decision to admit the evidence for abuse of discretion. (*People v. Brown* (2003) 31 Cal.4th 518, 540-542 (*Brown*); see *People v. Phillips* (2000) 22 Cal.4th 226, 236.)

Finally, even if the decision to admit a hearsay statement was erroneous, we will not disturb the court's decision unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Gutierrez* (2000) 78

Cal.App.4th 170, 177 [noting that "[i]t remains to be decided, however, whether the [evidence] was properly admitted as a spontaneous declaration, and, if not, whether that error was harmless," under *People v. Watson*].)

Here, there were arguments on both sides as to whether the statements were admissible as excited utterances, but the trial court ruled after reviewing the evidence, including the body camera footage with the statements, and in our view it was not an abuse of discretion to conclude they were admissible. Padilla's primary argument against such a conclusion is that at least two hours passed between when Maricela A. was assaulted and when she spoke to police.[3] However "[t]he amount of time that passes between a startling event and subsequent declaration is not dispositive, but will be scrutinized, along with other factors, to determine if the speaker's mental state remains excited." (*People v. Gutierrez* (2009) 45 Cal.4th 789, 810.) "The crucial element in determining whether an out-of-court statement is admissible as a spontaneous declaration is the mental state of the speaker. [Citation.] 'The nature of the utterance—how long it

---

[3] We note that Padilla did not make this argument below, and the amount of time walking to the store was not yet in evidence before the court at the time of its ruling on the statements At the hearing on the prosecution's motion in limine to admit the body-worn camera footage, the prosecution argued it was admissible because it happened "directly after she walks down the street from the crime scene." Padilla's counsel responded "that she's already walked down the street a long ways . . . it's not a spontaneous statement by the time the officers arrive." Accordingly, neither party expressly raised the *time* between the assault and Maricela A.'s statements to police, but only the *distance* between where these things happened. The time period came into evidence at trial, and the objection was not renewed on that basis. Given the trial court's review of the camera footage, we lack sufficient reason to conclude that the court would have reached a different conclusion had the evidence of the time been introduced and argued.

was made after the startling incident and whether the speaker blurted it out, for example—may be important, but solely as an indicator of the mental state of the declarant.' " (*Id.* at p. 811.) Indeed, our supreme court has previously held statements made two and a half hours after an exciting event can be admitted as excited utterances under some circumstances. (*Brown*, *supra*, 31 Cal.4th at pp. 540-542.)

Here, the trial court found that despite the passage of time, Maricela A. was under the effect of the excitement when she made her statements to police. After watching the footage, the court found Maricela A. was still "under extreme emotion. She looked like she was terrified, horrified, and . . . in a considerable amount of pain." Because of this, the court concluded "it would be unlikely . . . that it would be a thing that was made up, and that she would be lying about it." This factual finding—that Maricela A. was still operating under the excitement of the preceding events—is supported by substantial evidence. In the footage, Maricela A. is clearly distressed, crying, and having difficulty answering officers' questions. That was enough for the court to conclude that Maricela A. was still under excitement and that her "reflective powers" remained in abeyance.

However, even if these statements were not admissible as excited utterances, they were admissible under Evidence Code section 1238, which states that "evidence of a prior identification is admissible if the witness admits the prior identification and vouches for its accuracy." (*People v. Dykes* (2009) 46 Cal.4th 731, 758, quoting Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid.Code (1995 ed.) foll. § 1238, p. 249.) This exception overrides the prohibition on admission of prior consistent statements, as

7

"[u]nlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached [citations], evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value." (*People v. Gould* (1960) 54 Cal.2d 621, 626, overruled on other grounds in *People v. Cuevas* (1995) 12 Cal.4th 252, 263.) Maricela A.'s statements to police were almost exclusively attempts to identify Padilla, and Maricela A. testified to the accuracy of this identification before the jury saw the body-worn camera footage. The statements thus meet both requirements for admission under Evidence Code section 1238, and were admissible even if they were not admissible as excited utterances. (See *T.A.W. Performance*, *LLC v. Brembo*, *S.p.A.* (2020) 53 Cal.App.5th 632, 643 ["a trial court's ruling must be affirmed even if ' "given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' "].)

This exception allowed the court to admit all or nearly all of Maricela A.'s statements to police because those statements were merely identifying Padilla. Maricela A.'s first statement to police was telling them that Padilla was responsible for her injuries. She also showed police a picture of Padilla on her phone and gave them what information she knew about him (such as age, appearance, and where Maricela A. believed he lived). Though Maricela A. did explain to police exactly what Padilla did—breaking into her home and hitting her with a bat—this was a needed part of the

8

identification, as explaining what crime she believed Padilla participated in is essential to identify him "as a person who participated in a crime." (Evid. Code § 1238, subd. (a).) The only portions of her statements inadmissible under this rule were Maricela A.'s statements about her own personal identifying information, but these statements were not evidence offered to prove the truth of any disputed matter and also essential to simply make the identification.

In any event, even if Maricela A.'s earlier statements should not have come in under any hearsay exception, we would conclude their admission was harmless. Other evidence sufficiently corroborated Maricela A.'s testimony such that it is not reasonably probable that excluding her statements to police would have resulted in a more favorable outcome for Padilla. For instance, Maricela A. testified she also told a neighbor that Padilla attacked her, and Padilla's counsel did not object to the admission of this hearsay statement.[4] Specifically, she testified that after the attack she approached a man named George and "told him that Mr. Padilla and his niece [sic], Joanne, had beat me up." We also have reason to believe Maricela A.'s statements specifically identified Padilla, because George knew him: both Padilla and another witness testified that George and Padilla were talking to each other at the witness's house while the incident occurred. This is a contemporaneous statement about Padilla's identity, to someone who knew Padilla and would recognize it as such, consistent with the statements she later made to police, which served a nearly identical purpose as her statements to police, and which

_____

[4] An objection to this statement likely would have been properly overruled due to the identification exception to hearsay codified in Evidence Code section 1238.

9

was admitted without controversy. To conclude that admitting her statements to police prejudiced Padilla, we would have to conclude that this earlier statement to her neighbor did not, or that only the cumulative effect of both statements created a reasonable probability of a different result. We do not find that argument convincing.

In addition, physical and circumstantial evidence uncovered by police corroborated the story she told on the stand. Maricela A. testified that Padilla attacked her with a bat and threatened her with a machete. She also told the jury that Joanne T., Jeanette T., and Jessica T. all assaulted her alongside Padilla. When police went to Padilla's residence, all three of the women were present and attempted to run. More damningly, Jeanette T.'s car was there, and when police searched it they found a baseball bat, machete, and an extra-large tank top stained with a blood-like red substance. This evidence matches Maricela A.'s testimony about what happened, connects all the alleged assailants to Padilla and to each other near the time of the attack, and places the women with two of the weapons they allegedly used in the attack. Given this corroborating evidence, excluding Maricela A.'s more contemporaneous statements to police was unlikely to have made the difference in the jury's assessment of her credibility in identifying Padilla, and therefore would not have been reasonably probable to lead to a more favorable outcome for Padilla.

Because Maricela A.'s statements to officers in body-worn camera footage were admissible, or at most harmless error, we affirm the court's judgment.

DISPOSITION

We affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:


McKINSTER
Acting P. J.


LEE
J.